Citation Nr: 1528213 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 12-08 719 ) DATE
 )
 )
On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUE

Entitlement to service connection for the cause of the Veteran's death.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

M. Hannan, Counsel




INTRODUCTION

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The Veteran had active service in the United States Army from October 1966 to May 1969; he served in Vietnam and was awarded the Purple Heart Medal. The Veteran subsequently served on active duty in the Army from March 1971 to August 1988, when he retired. The Veteran died in April 2010. The appellant is seeking benefits as the Veteran's surviving spouse. 

This matter originally came before the Board of Veterans' Appeals (Board) on appeal from an August 2011 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania that denied the appellant's claim of entitlement to service connection for the cause of the Veteran's death. Original jurisdiction of the appellant's claim resides in the RO in Atlanta, Georgia. 

The Board remanded the case for additional development in April 2014. The case has now been returned to the Board for appellate review.

In addition to the paper claims file, there is an electronic file associated with the claim. The Board has reviewed both the paper claims file and the electronic file.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.




REMAND

The United States Court of Appeals for Veterans Claims (Court) has held that a remand by the Court or the Board confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268 (1998). 

The April 2014 Board remand directives specifically stated that the RO was to search, at the National Personnel Records Center, or other appropriate sources, for the rest of the Veteran's service medical treatment records. If any location contacted suggested other sources, those sources were to be encompassed by the search. Here, it is unclear from the evidence of record, including the Supplemental Statement of the Case (SSOC), who was contacted in the search for records. Additional service personnel records were obtained and these reflect that the Veteran incurred shrapnel wounds of the upper body (face, shoulder and neck) on December 26, 1968. However, no search was made for any hospital records for December or January 1968.

Furthermore, the evidence of record does not contain any determination by the RO that the service medical records are unavailable. In cases where a Veteran's service records are unavailable through no fault of the claimant, there is a heightened obligation to assist the claimant in the development of his case. O'Hare v. Derwinski, 1 Vet. App. 365 (1991). The heightened duty to assist a Veteran in developing facts pertinent to his claim in a case where service records are presumed destroyed includes the obligation to search for alternative medical records. Moore v. Derwinski, 1 Vet. App. 401 (1991). There is no indication that the RO sought any alternative records. This must be rectified on remand.

The April 2014 Board remand directives also specifically stated that the RO was to search for information relating to the Veteran's Purple Heart Medal. The appellant stated, in an October 2014 letter, that an Army chaplain read the Veteran's Purple Heart Medal citation at his funeral, but there is no indication that the RO took any steps to obtain a copy of that citation. This must be rectified on remand.

In addition, the April 2014 Board remand directives specifically stated that the RO was to obtain all TRI-CARE treatment records, to include outpatient treatment at the Martin Army Community Hospital. Post-remand, it appears that only a search for inpatient hospital records was accomplished. As reflected in a document added to Virtual VA in January 2010, and the copy of that document submitted by the appellant in October 2014, the Veteran received outpatient treatment at that facility in the primary care clinic. Furthermore, a June 2011 VA Form 21-0820, indicates that the RO was informed that outpatient records were available. This must be rectified on remand.

The April 2014 Board remand directives also specifically stated that the RO was to obtain a medical opinion from an appropriate physician such as a pathologist and that if the reviewer concluded that there was insufficient information to provide an etiologic opinion without result to mere speculation, the reviewer was supposed to state whether the inability to provide a definitive opinion was due to a need for further information (with said needed information identified) or because the limits of medical knowledge had been exhausted regarding the cause of the Veteran's death. The RO was supposed to conduct a review to verify that all requested findings and opinions had been offered and if information was deemed lacking, refer the report to the VA reviewing physician for corrections or additions. Here, the RO sent the case to be reviewed by a family practice doctor who apparently relied on other physicians due to his lack of knowledge and who also stated that he was unable to provide an opinion without resort to speculation without indicating whether his inability to provide a definitive opinion was due to a need for further information (with said needed information identified) or because the limits of medical knowledge had been exhausted regarding the cause of the Veteran's death.

Once VA undertakes the effort to provide an examination when developing a service connection claim, it must provide an adequate one. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). The RO obtained a medical opinion in March 2015. However, as noted above, service medical treatment records are missing from the evidence of record, as are post-service Martin Army Community Hospital records. See Shipwash v. Brown, 8 Vet. App. 218, 222 (1995); Flash v. Brown, 8 Vet. App. 332, 339-340 (1995) (regarding the duty of VA to provide medical examinations conducted by medical professionals with full access to and review of veteran's claims folder). Furthermore, while the reviewer stated that he was unaware of any literature that would provide information about the etiology of glioblastoma multiforme, it is not stated what kind of literature search was performed. A quick search performed by the Board found citations to articles that noted that ionizing radiation is one of the physical factors that increase the likelihood of developing a brain tumor, to include as due to skull x-rays; that the incidence of glioblastoma is also related to height and BMI - high values of these two features increase the risk of glioblastoma incidence; and that viruses, such as human cytomegaly virus (HCMV) are also believed to be among the etiologic agents for glioma development. The following chemicals are considered as potentially dangerous: pesticides; polycyclic aromatic compounds; and solvents. Clearly, then, the reviewer's opinion is inadequate.

In D'Aries v. Peake, 22 Vet. App. 97, 105 (2008), the Court held that there must be substantial compliance with the terms of a Board remand. Those requirements have not yet been fulfilled and the case, regrettably, must again be remanded. 

Finally, the Board notes that a claimant, in pursuing her appeal, has some responsibility to cooperate in the development of all facts pertinent to her claim, and the duty to assist is not a "one-way street" as observed in Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). This includes providing requested information. On remand, the appellant must provide any required release forms needed to obtain all TRI-CARE treatment records.

Therefore, to ensure full compliance with due process requirements, this case is REMANDED to the AMC/RO for the following:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Search, at the National Personnel Records Center, or other appropriate sources, for the rest of the Veteran's service medical treatment records or alternative records. In particular, search for hospital records relating to the shrapnel wounds incurred in Vietnam on December 26, 1968. If any location contacted suggests other sources, those sources must be encompassed by the search. Ensure that any copies included in the claims file are legible.

2. Search, at the National Personnel Records Center, or other appropriate sources, such as the appellant or the office of the Army chaplain who conducted the Veteran's funeral, for the Veteran's Purple Heart Medal citation. 

3. After obtaining the appropriate release forms from the appellant, obtain all outpatient TRI-CARE treatment records for the Veteran, to include treatment at the Martin Army Community Hospital primary care clinic.

4. All items of correspondence, as well as any medical or treatment records obtained, must be made a part of the claims file. To the extent there is an attempt to obtain any of these records that is unsuccessful, the claims file must contain documentation of the attempts made, to include preparing a memorandum of unavailability and following the procedures outlined in 38 C.F.R. § 3.159(e), if appropriate.

5. After accomplishing the above development and after completing any additional notification and/or development action deemed warranted by the record, arrange for the Veteran's records to be reviewed for a determination of the cause of the Veteran's death by an oncologist (preferably one with experience treating brain tumors) or, as a second choice, a neurologist with experience treating brain tumors. The reviewer must be provided with the entire claims file, including any records obtained pursuant to the above development, and a copy of this remand. If the reviewing physician does not have access to the electronic file, any relevant records contained in the electronic file that are not available to the reviewer must be printed and associated with the paper claims file so they can be available to the reviewer.

The reviewer is requested to provide an opinion as to the medical probability that the fatal glioblastoma is related to any aspect of the Veteran's service. The reviewer must provide an opinion as to the following questions:

a. What is known about the etiologic causes of glioblastoma multiforme? Are there any known risk factors? List them. Discuss age, race, BMI, ionizing radiation, head x-rays, head trauma, viral infections, exposure to solvents and pesticides.

b. Is there any etiologic connection between any in-service head trauma (if any) and the development of the glioblastoma? Explain why or why not. Discuss the materials submitted in support of this theory, to include the January 2012 private medical opinion. Discuss what is meant by the statement that something "cannot be ruled out".

c. Is there any etiologic connection between any in-service exposure to malaria (if any) and the development of the glioblastoma? Explain why or why not. Discuss the materials submitted in support of this theory.

d. Is there any etiologic connection between any in-service exposure to herbicides in Vietnam, including dioxin, and the development of the glioblastoma? Explain why or why not. Discuss the materials submitted in support of this theory, to include the January 2012 private medical opinion. Discuss what is meant by the statement that something "cannot be ruled out".

The reviewer must identify the information on which the opinions are based. The opinions must adequately summarize the relevant history and clinical findings, and provide a detailed explanation as to all medical conclusions rendered. 

In assessing the relative likelihood as to origin and etiology of the fatal glioblastoma, the reviewer must apply the standard of whether it is at least as likely as not (i.e., to at least a 50-50 degree of probability) that the Veteran's death is causally or etiologically related to any incident of his active service, including any incident related to his service in Vietnam, or whether such a causal or etiological relationship is unlikely (i.e., less than a 50 percent probability), with the rationale for any such conclusion set out in the report.

Note: As used above, the term "at least as likely as not" does not mean merely within the realm of medical possibility, but rather that the weight of medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of causation as it is to find against it.

If any opinion and supporting rationale cannot be provided without invoking processes relating to guesses or judgment based upon mere conjecture, the reviewer must clearly and specifically so specify in the report, and explain why this is so. In this regard, if the reviewer concludes that there is insufficient information to provide an etiologic opinion without result to mere speculation, the reviewer must state whether the inability to provide a definitive opinion was due to a need for further information (with said needed information identified) or because the limits of medical knowledge had been exhausted regarding the cause of the Veteran's death. See Jones v. Shinseki, 23 Vet. App. 382 (2010).

6. Upon receipt of the VA physician reviewer's report, conduct a review to verify that all requested findings and opinions have been offered. If information is deemed lacking, refer the report to the VA reviewing physician for corrections or additions. See 38 C.F.R. § 4.2 (If the findings on an examination report do not contain sufficient detail, it is incumbent upon the rating board to return the examination report as inadequate for evaluation purposes.).

7. Thereafter, readjudicate the appellant's 38 C.F.R. § 3.312 claim. The readjudication must reflect consideration of all the evidence of record and be accomplished with application of all appropriate legal theories, case law, statutes and regulations.

8. If the benefit sought on appeal remains denied, the appellant and her representative must be provided a supplemental statement of the case (SSOC). The SSOC must contain notice of all relevant actions taken on the claim for benefits, to include a summary of the evidence and applicable law and regulations considered pertinent to the issue currently on appeal. An appropriate period of time must be allowed for response.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
KATHLEEN K. GALLAGHER
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).