﻿Citation Nr: AXXXXXXXX
Decision Date: 12/06/18 Archive Date: 12/06/18

DOCKET NO. 180927-466
DATE: December 6, 2018
ORDER
Service connection for a lumbar spine disorder is granted.
Service connection for radiculopathy of the bilateral lower extremities as due to a lumbar spine disorder is granted.
REMANDED
Entitlement to service connection for a left shoulder disorder is remanded.
FINDINGS OF FACT
1. The Veteran has experienced symptoms related to a lumbar spine disorder since his separation from service.
2. The Veteran’s radiculopathy of the bilateral lower extremities is a manifestation of his lumbar spine disorder.
CONCLUSIONS OF LAW
1. The criteria for service connection for a lumbar spine disorder have been met. 38 U.S.C. §§ 1110, 1111, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a), 3.307, 3.309.
2. The criteria for service connection for radiculopathy of the bilateral lower extremities as due to a lumbar spine disorder have been met. 38 U.S.C. §§ 1110, 1111, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a), 3.310.
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.
The Veteran served on active duty from January 1985 to January 1989 and from December 1990 to September 1991. In March 2018, VA received the Veteran’s opt-in selection of the supplemental claim lane through RAMP. In a September 2018 rating decision, which the Veteran received notification of on September 26, 2018, the reviewer denied the Veteran’s appeal. In October 2018, the Veteran requested a direct review of his appeal by the Board. Consequently, this case comes before the Board of Veterans’ Appeals (Board) on appeal from the September 2018 rating decision by the Department of Veterans Affairs (VA). As a result of the direct election, only evidence of record at the time of the issuance of the September 2018 rating decision will be considered.
The Veteran submitted evidence during a period of time when new evidence was not allowed. Therefore, the Board may not consider this evidence. The Veteran may submit this evidence, along with a Supplemental Claim. If the new evidence is relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Specific instructions for filing a Supplemental Claim are included with this decision.
The Board has combined the Veteran’s back claims on appeal into one issue that encompasses all similar disorders. See Clemons v. Shinseki, 23 Vet. App. 1 (2009) (the scope of a disability claim includes any disability that may reasonably be encompassed by the claimant’s description of the claim, reported symptoms, and the other information of record).
In March 2018, the Veteran submitted an application for entitlement to a total disability rating based on individual unemployability (TDIU). A TDIU claim is part of a claim for a higher rating when such claim is raised by the record or asserted by the Veteran. See Rice v. Shinseki, 22 Vet. App. 447 (2009). Therefore, the Board finds that the issue of a TDIU is properly asserted by the Veteran and VA should develop the issue upon remand.
In October 2018, the Veteran’s representative stated their interest in filing a claim for service connection for a psychiatric disorder. However, no formal claim has been filed. VA should communicate with the Veteran’s representative to inform them of the claims process.
In a July 2012 letter, the Veteran was informed that his service treatment records were unavailable. The Board notes that VA was previously only able to obtain some of the Veteran’s service treatment records, which include his original entrance examination. The Board recognizes that in October 2018, VA located the Veteran’s missing service treatment records and attached them to the claims file. Nevertheless, as the Veteran elected a direct review of his claim and the records were received after the issuance of the rating decision on appeal, the Board cannot consider them at this moment. 
In such a case as this, the Board would normally be obligated to remand the Veteran’s claim for reconsideration by the regional office. See 38 C.F.R. § 3.156(c). However, as the Board can grant the Veteran’s claims for a back disorder and accompanying radiculopathy even without consideration of the service treatment records, the Board will proceed in its decision as if the records were never received. However, the Veteran’s left shoulder disorder will be remanded for reasons that include reconsideration under 38 C.F.R. § 3.156(c). 
In such cases there is a heightened obligation to assist the appellant in the development of the case, to explain findings and conclusions, and to consider carefully the benefit of the doubt rule in cases, such as in this situation, in which records are presumed to have been or were destroyed while the file was in the possession of the government. See Washington v. Nicholson, 19 Vet. App. 362, 369- 70 (2005); see also Cromer v. Nicholson, 19 Vet. App. 215, 217 (2005) (citing O’Hare v. Derwinski, 1 Vet. App. 365, 367 (1991)). However, the legal standard for proving a claim for service connection is not lowered. Rather, it increases the Board’s obligation to evaluate and discuss in its decision all of the evidence that may be favorable to the claimant. See Russo v. Brown, 9 Vet. App. 46 (1996).
Service Connection
Under the relevant laws and regulations, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131. Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004); Caluza v. Brown, 7 Vet. App. 498, 505 (1995). 
Certain chronic diseases are subject to presumptive service connection if manifest to a compensable degree within one year from separation from service even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C. §§ 1112, 1113; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). Moreover, for such chronic diseases, an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology if the disability claimed qualifies as a chronic disease listed in 38 C.F.R. § 3.309(a); see 38 C.F.R. § 3.303(b); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2014). Additionally, evidence of continuous symptoms since active duty is a factor for consideration as to whether a causal relationship exists between an in-service injury or incident and the current disorder as is contemplated under 38 C.F.R. § 3.303(a). 
VA must give due consideration to all pertinent medical and lay evidence in a case where a veteran is seeking service connection. 38 U.S.C. § 1154(a). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the veteran. 38 U.S.C. § 5107(b). 
1. Entitlement to service connection for a lumbar spine disorder
2. Entitlement to service connection for radiculopathy of the bilateral lower extremities as due to a lumbar spine disorder
The Veteran contends that he suffers from a back disorder that resulted from the heavy weight he had to carry and the long distances he had to walk in the military. 
The Veteran has a current diagnosis of degenerative disc disease of the lumbar spine. The Board concludes that the Veteran’s lumbar spine disorder manifested during active service and that there has been continuity of the same symptomatology since service. 
While no treatment records exist from during the applicable presumptive period, the Board finds that the Veteran continued to experience the same symptoms from his separation from service until the present day. The Veteran is competent to report that he experienced symptoms of back pain during that period. The Veteran’s reports are credible and entitled to probative weight. The Veteran’s reports are consistent with the statements of a fellow servicemember who recalled the Veteran’s back complaints during service as well as his sister and wife’s statements noting the Veteran’s reports of back pain during and immediately after service. The statements are internally consistent and consistent with the other evidence of record. 
Furthermore, in a March 2018 private opinion, a medical practitioner submitted a statement that the Veterans’ back condition with associated nerve damage is at least as likely as not related to service. The medical practitioner cited the Veteran’s statements, including his statements to his treating providers, as justification. The Board acknowledges that a July 2015 VA examiner came to the opposite conclusion. However, as noted by the medical practitioner, the VA examiner justified their opinion on the fact that his back condition has just as much to do with his civilian duties as his military duties. As a result, the VA examiner herself appears to indicate that his back condition is at least in part etiologically related to military service. 
Consequently, the Board finds that service connection is warranted for a lumbar spine disorder. 
Radiculopathy
The Veteran has specifically filed service connection not only for a lumbar spine disorder, but also for the neurological manifestations of the disorder. Additionally, inasmuch as radiculopathy is a neurological manifestation of a spine disability, it is included with the increased rating claim for a spine disability.
The Veteran’s VA treatment records amply document that he suffers from radiculopathy of the bilateral lower extremities as due to his spine disorder. Moreover, the medical practitioner who offered the March 2018 private medical opinion also confirmed such a link. The Board notes that the July 2015 VA examiner did not find signs or symptoms of radiculopathy. However, given the Veteran’s VA treatment records, and the explanation of the March 2018 medical practitioner that the Veteran’s medications were likely masking his neurologic manifestations during his VA examination, the Board finds that service connection for radiculopathy is warranted.
REASONS FOR REMAND
1. Entitlement to service connection for a left shoulder disorder is remanded.
The issue of entitlement to service connection for a left shoulder disorder is remanded to correct a duty to assist error that occurred prior to the September 2018 rating decision on appeal. The Agency of Original Jurisdiction (AOJ) did not obtain a VA examination prior to the rating decision on appeal. However, based on the evidence associated with the claims file prior to the rating decision, the Board finds that a VA examination and opinion is necessary to determine whether the Veteran’s left shoulder disorder is related to service. Additionally, as noted in the introduction of this decision, the Veteran’s service treatment records were recently located. As a result, VA is obligated to reconsider the Veteran’s claim regardless of if there were any other reasons to remand the case.
The Veteran has been diagnosed with degenerative joint disease and impingement syndrome of the left shoulder, and he stated that his left shoulder disorder first manifested when he heard a pop in his shoulder in 1988 when he was involved in a training run and triathlon. He states that he has suffered pain in his shoulder since that time. However, the Veteran’s shoulder was observed to be abnormal when he entered military service in November 1984. As a result, the proper question should be whether the Veteran’s left shoulder disorder was aggravated by military service. The Veteran has also raised the possibility that his left shoulder disorder is secondary to his service-connected lumbar spine disorder. In March 2018, a medical practitioner offered the private opinion that the Veteran’s left shoulder disorder was related to service, citing the Veteran’s statement and lack of contradictory information.
Therefore, the Board finds that a VA examination is warranted to consider whether the Veteran’s left shoulder disorder was aggravated by service and/or whether it is etiologically related to his service-connected lumbar spine disorder.
The matter is REMANDED for the following action:
Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any left shoulder disorder. 
(1) Given the fact that the Veteran’s shoulder was abnormal when he entered service, the examiner is asked to state whether the Veteran’s left shoulder was at least as likely as not worsened by service and, if so, whether any increase in severity was clearly and unmistakably (undebatable) due to its natural progress.
(2) The examiner is also asked to opine on whether the left shoulder disorder is at least as likely as not etiologically related to his service-connected lumbar spine disorder.
 
B.T. KNOPE
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD A. Borman, Associate Counsel